[No. B034523. Second Dist., Div. Six. Dec. 8, 1989.]

JERRY R. KING, Plaintiff and Respondent, v.
MOBILE HOME RENT REVIEW BOARD OF SAN LUIS OBISPO
COUNTY, Defendant and Appellant.

COUNSEL

Raymond L. Girard for Plaintiff and Appellant.

Andre, Morris & Buttery and James C. Buttery for Defendant and Respondent.

Biddle & Hamilton, W. Craig Biddle and Warren C. Stracener as Amici Curiae on behalf of Defendant and Respondent.

OPINION

STONE (S. J.), P. J.—The Mobile Home Rent Review Board of San Luis Obispo County appeals from the trial court's judgment of peremptory writ of mandate ordering it to accept respondent Jerry R. King's application for rent increase at respondent's mobilehome park. Appellant had refused to process the application because copies of respondent's federal income tax returns for 1985 and 1986 were not included with his application.

Appellant contends that the trial court's ruling is in error because income tax returns are not privileged in the context of nonadversarial administrative proceedings, and, even if they are privileged, in this case respondent waived the privilege by submitting an application for rent increase. Appellant further argues that public policy dictates that it be allowed access to respondent's returns.

We affirm the judgment.

## BACKGROUND

Respondent is the owner of Rancho Paso Mobilehome Park in San Luis Obispo County. In June 1984, the voters of San Luis Obispo County approved an initiative measure establishing a mobilehome park rent control law.

The ordinance, which was enacted in 1986 pursuant to the initiative, establishes a mobilehome rent review board empowered to investigate, hold hearings and determine issues relating to rent increases and decreases in the county's mobilehome parks. Designated members of the board are the county assessor, county auditor and county clerk-recorder.

The ordinance allows mobilehome park owners an automatic annual cost-of-living increase in monthly space rents. A park owner may apply to appellant for an additional rent increase if the owner has incurred extraordinary costs that prevent him from making a reasonable return on his property. In applying for this hardship increase, the ordinance provides that the applicant shall produce at appellant's request any records, reports or documents appellant may deem necessary in determining whether to approve the application. Appellant must conduct a hearing on a hardship rent increase application within 30 days of the receipt of the application.

Respondent presented an amended hardship application to appellant in March 1988. On March 28, 1988, appellant returned respondent's application as incomplete, advising him that an applicant's federal income tax returns must be presented to support a hardship application, and that tax returns submitted to appellant would be kept confidential, would not be copied, and would be returned to respondent at the end of the application process.

Respondent filed a petition for peremptory writ of mandate seeking to compel appellant to accept his application for processing, contending that his tax returns are protected from public disclosure and that the county ordinance does not require submission of his returns.

Appellant asserted in answering the petition that respondent's statement of income and expenses in his application needed to be verified by other evidence showing the accuracy of the statement and that respondent's income tax returns would provide the only "expeditious" manner by which appellant could audit or verify the application and carry out its duties under the ordinance. Appellant further argued that its income tax return require-

ment is in the public interest of insuring the smooth running of governmental agencies, and is made under the condition that the returns are kept confidential.

At the hearing on respondent's petition, appellant's counsel argued that income tax returns are required because "it's difficult for these people [the individual rent review board members] who are acting [*sic*] office holders of the county *to have to take their time to determine one of these* [*rent increase*] *applications* if they are going to have to staff themselves, . . . and dig thoroughly into every record presented by an applicant. [¶] . . . And the point [thereto] that I have stressed several times is that these returns are not asked for as a means of impeaching the park owner . . . . They are simply asked for *to expedite the hearing process* to enable these [rent review board] people who, again, are not necessarily skilled in or educated in tax work, to make a decision and to make it based on what is commonly accepted as the best substantiation for a business record, namely, tax returns." (Italics added.)

In its judgment for peremptory writ of mandate, the trial court ordered appellant to accept respondent's application for rent increase, to refrain from requiring respondent to produce state or federal income tax returns, and to refrain from making findings based on respondent's refusal to produce his tax returns. The court denied respondent's request for attorney fees.

## DISCUSSION

Revenue and Taxation Code section 19282 provides that it is a misdemeanor offense for any member of the Franchise Tax Board or any agent, officer or employee of the state and its political subdivisions to disclose in any manner information contained in personal income tax returns.[1] Inasmuch as the purpose of section 19282 is to encourage taxpayers to make full and truthful declarations in their returns without fear that such information will be used against them, the California Supreme Court has declared that the statute creates a privilege against the disclosure of income tax returns. (*Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509, 513 [319 P.2d 621], affirmed in *Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 6

---

[1] The statute reads: "Except as otherwise provided in this article, it is a misdemeanor for the Franchise Tax Board or any member thereof, or any deputy, agent, clerk, or other officer or employee of the state (including its political subdivisions), or any former officer or employee or other individual, who in the course of his or her employment or duty has or had access to returns, reports, or documents required under this part, to disclose or make known in any manner information as to the amount of income or any particulars set forth or disclosed therein."

[123 Cal.Rptr. 283, 538 P.2d 739].) The court has further ruled that attempts to avoid the application of the privilege by the indirect means of permitting third parties to obtain copies of tax returns would not be tolerated. (*Webb* v. *Standard Oil Co., supra; Sav-On Drugs, Inc.* v. *Superior Court, supra,* at pp. 6-7.) Specifically, in *Webb* the court held that forcing a taxpayer to produce a copy of his state or federal income tax returns in litigation, which the opposing party wished to use for impeachment purposes, would effectively defeat section 19282's legislative purpose. (49 Cal.2d 513.)

■ The judicially created privilege is not absolute. (*Sammut* v. *Sammut* (1980) 103 Cal.App.3d 557, 560 [163 Cal.Rptr. 193], citing *Sav-On Drugs, Inc.* v. *Superior Court, supra,* 15 Cal.3d at p. 8.) Courts have held that the privilege does not apply where there is an intentional relinquishment or waiver of the privilege, or a public policy is involved which is greater than that of confidentiality of tax returns. (*Sammut* v. *Sammut, supra.*)

Appellant asserts that the present case qualifies as the type of situation where disclosure of tax return information is permissible. This is so, it contends, because respondent waived the privilege by submitting a rent increase application, and the public policy of allowing administrative agencies to function properly is greater than that of the confidentiality of returns.

■ Appellant goes even further and argues that the privilege does not even exist in this case which involves a factfinding, nonadversarial proceeding.

Appellant does not cite, nor can we find, any statutory or decisional authority supporting the latter proposition. Although *Webb* and *Sav-On Drugs* occurred in the context of litigation, there is no rule limiting the application of the privilege to adversarial, court proceedings. Nor should there be. The Supreme Court has declared that attempts to avoid the application of the privilege by indirect means are not to be tolerated. (*Sav-On Drugs, Inc.* v. *Superior Court, supra,* 15 Cal.3d at p. 7.) The requirement of providing copies of tax returns in an administrative proceeding is as much an indirect method of obtaining personal tax information as is the attempt to seek copies of returns for discovery purposes. Full disclosure in the preparation of tax returns would not be encouraged by a rule limiting disclosure of returns to certain kinds of judicial, but not administrative, proceedings, and would only undermine the policy behind Revenue and Taxation Code section 19282. We are not persuaded that there are any factors or policies supporting the inapplicability of the privilege in administrative proceedings before local rent review boards.

██   Appellant's argument, that disclosure of respondent's tax returns is permissible because he waived the privilege of confidentiality by voluntarily submitting a hardship application, has no merit. As respondent notes, the rent control ordinance does not compel tax return information. Such requirement is merely an informal administrative policy established after the ordinance was enacted. Moreover, appellant has not shown that verification of respondent's application will be impossible without the information contained in his returns. (See *Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825, 830 [134 Cal.Rptr. 130].) Consequently, respondent's attempt to file a rent increase application does not signify his implied consent to have appellant review his tax returns.

██   Appellant's next contention that it should be allowed access to respondent's tax returns because the public policy in "expediting" administrative proceedings is greater than the policy underlying the privilege of confidentiality, is unavailing.

The import of appellant's unclear argument seems to be that applicants' tax returns are necessary in order to give appellant the ability to verify rent increase applications. Even if such a necessity may exist, the record before us does not support its presence.

Appellant's entire position is based on the idea that the submission of tax returns with hardship applications is needed merely to "expedite" the application review process. No argument is forwarded or evidence presented that, without information contained in tax returns, appellant would be unable to perform its duties under the ordinance. There is absolutely no indication that other verification methods are unavailable to ascertain a park owner's financial status. As the trial court commented, appellant may request the financial information it needs in a form that an applicant must fill out under penalty of perjury, giving applicants the option, if they want, to submit their tax returns in lieu of filling out the form.

Although tax returns do not enjoy an absolute privilege from disclosure, nevertheless, public policy prevents *unnecessary* public exposure if taxpayers are to be encouraged to file complete and accurate returns. (*Premium Service Corp.* v. *Sperry & Hutchinson Co.* (9th Cir. 1975) 511 F.2d 225, 229.)  ██ ██ ██ ██   Despite appellant's promise of confidentiality to its applicants,[2] no rational purpose is served by requiring an applicant for a

---

[2] Amicus curiae Western Mobilehome Association's (WMA) argument, that such promise is illusory under California's open meeting laws, is not necessarily true. As appellant notes, Government Code section 6255 (the Public Records Act, Gov. Code, § 6250 et seq.) would give appellant the authority to exempt respondent's returns from disclosure under Government Code section 6254, subdivision (k), providing that nothing in the Public Records Act

hardship rent increase to disclose the contents of his returns when such disclosure is not essential. (See *Thomas B.* v. *Superior Court* (1985) 175 Cal.App.3d 255, 262 [220 Cal.Rptr. 577].) Appellant's trial counsel's complaint that appellant has neither the time (it has 30 days within which to hold a hearing following the receipt of a rent increase application) nor the resources to investigate a hardship application without the availability of tax returns is a problem that should be presented to appellant's county board of supervisors, not to the courts.

We conclude that there is no law or public policy consideration permitting disclosure of respondent's income tax returns in having his hardship rent increase application to appellant reviewed.

We do not consider respondent's request for attorney fees for prosecuting this action pursuant to Code of Civil Procedure section 1021.5. Although the trial court denied respondent attorney fees, the record does not indicate whether respondent requested statutory fees. In any event, respondent has not filed a cross-appeal in this matter.

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 21, 1990.

---

mandates the disclosure of records which are "exempted or prohibited pursuant to provisions of federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." Not only does Revenue and Taxation Code section 19282 prohibit disclosure of tax information by state and local government employees, Evidence Code section 1040, subdivision (b)(2), provides that a public entity has its own privilege to refuse disclosure of public information where disclosure would violate the public interest in preserving its confidentiality.

WMA's additional argument, that Civil Code section 798.74, prohibiting mobilehome park management from requiring mobilehome purchasers or tenants to submit copies of their personal income tax returns as verification of their income, evidences a legislative intent that mobilehome rent review boards likewise are prohibited from requiring copies of park owners' returns, is without merit. We agree with appellant that the law does not suggest such legislative intent. The Mobilehome Residency Law (Civ. Code, § 798 et seq.) does not constitute a general and pervasive legislative scheme for the regulation of all aspects of mobilehome parks. (*Palos Verdes Shores Mobile Estates, Ltd.* v. *City of Los Angeles* (1983) 142 Cal.App.3d 362, 374.)