Opinion
 

 GILBERT, J.
 

 Here we complete a trilogy of cases in which we consider discovery of financial records of people living with ex-spouses.
 

 
 *724
 
 In
 
 In re Marriage of Tapia
 
 (1989) 211 Cal.App.3d 628 [259 Cal.Rptr. 459], we held that contributions by third persons to an ex-spouse’s living expenses should be considered by the trial court in determining the ex-spouse’s ability to pay spousal or child support.
 

 In
 
 Harris
 
 v.
 
 Superior Court
 
 (1992) 3 Cal.App.4th 661 [4 Cal.Rptr.2d 564] we held that
 
 Tapia
 
 should not be read to allow automatic discovery of the financial records of ex-spouses living with a third person. We held that when such discovery might be appropriate, the trial court should balance the third party’s right of privacy against the ex-spouse’s right to know.
 

 Here we further refine and explain the duties and responsibilities of the court and of parties in those cases in which the judge makes a preliminary determination that discovery is appropriate.
 

 In this writ proceeding we conclude that the proponent of discovery made a sufficient initial showing to overcome the deponent’s privacy interests in her financial records. We conclude, however, that the trial court abused its discretion when it failed to (1) conduct an in camera review of the pertinent documents, and (2) to issue a protective order.
 

 Facts
 

 Petitioner, Jamie Babcock, has resided with Dennis DiGiovanni since June of 1992 when he separated from real party, Denise DiGiovanni, his first wife.
 

 Ms. Babcock had been employed by Mr. DiGiovanni at his business, Road Tech, Inc., between the years 1987 and 1991. She had been unemployed since January of 1991.
 

 Ms. Babcock owned a home valued at approximately $341,000, for which she made a $91,000 down payment in December 1991. She also owned a $30,000 automobile for which she made a down payment of $7,500 in June of 1992. Ms. DiGiovanni suspected that the funds for the house and car had come from community funds.
 

 Ms. DiGiovanni found a loan application for Ms. Babcock’s automobile, in which Ms. Babcock declared that she was the vice-president of sales and marketing for Road Tech, Inc., and was earning $7,900 per month.
 

 On April 22, 1994, Ms. DiGiovanni deposed Ms. Babcock. Babcock refused to answer any questions concerning the source of the money for the
 
 *725
 
 down payments. Ms. Babcock did deny, however, that the money had come from Mr. DiGiovanni.
 

 A few days later, Ms. DiGiovanni served a subpoena on two banks and on an automobile dealership to produce records of Ms. Babcock’s loan applications, checks, and other related documents. Ms. Babcock moved the court to quash the subpoenas, to impose sanctions, or in the alternative, to have an in camera inspection.
 
 (Harris
 
 v.
 
 Superior Court, supra,
 
 3 Cal.App.4th 661.) Included in the motion was a declaration from Dennis DiGiovanni attesting that no money from him or from the community had been used to purchase the home or the Toyota.
 

 Ms. DiGiovanni moved to compel production of bank and other financial documents. (Code Civ. Proc., § 2020.) She also moved to join Ms. Babcock in the dissolution proceeding upon the grounds that there had been a wrongful diversion to her of community funds. (Fam. Code, § 1100, subd. (b).)
 

 Respondent superior court denied the motion to quash, and imposed sanctions upon Ms. Babcock in the sum of $764. It also granted Ms. DiGiovanni’s motions to compel production of Ms. Babcock’s loan documents and of every check of more than $1,000 deposited, from whatever source, into her bank account during the period of January 1, 1991, through July 31, 1992. The court denied Ms. DiGiovanni’s request to view Ms. Babcock’s tax returns.
 

 Ms. Babcock now seeks review by way of an extraordinary writ. She asserts that respondent court erred in requiring the production of records which are not directly relevant to the proceeding and in ordering disclosure without a protective order and without first conducting an in camera inspection. (See
 
 Harris
 
 v.
 
 Superior Court, supra,
 
 3 Cal.App.4th at p. 665.)
 

 Ms. Babcock lacks an adequate remedy at law. We therefore have granted an alternative writ of mandate relating to the issue of the need for an in camera inspection and for a protective order. We have also stayed the order compelling production of the documents.
 

 Ms. Babcock also claims her joinder in this action was improper.
 

 Discussion
 

 Joinder
 

 Joinder is proper where a spouse alleges that the other spouse has illegally made a gift of community funds. (See Fam. Code, §§ 1100, subd.
 
 *726
 
 (b), 2021; Cal. Rules of Court, rule 1250.) Accordingly, we deny the petition on the joinder issue.
 

 In Camera Hearing
 

 It is elementary that a party has a privacy interest in his or her personal financial records.
 
 (Valley Bank of Nevada
 
 v.
 
 Superior Court
 
 (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) This right applies to nonmarital cohabitants.
 
 (Harris
 
 v.
 
 Superior Court, supra,
 
 3 Cal.App.4th at p. 668.) To paraphrase
 
 Harris,
 
 it does not follow that merely because Ms. Babcock lives in the same house with Mr. DiGiovanni she has waived her right of privacy.
 
 (Ibid.)
 

 Ms. Babcock cites the
 
 Harris
 
 case to support her position. In
 
 Harris,
 
 we said that the law favors the proponent who initially seeks discovery of missing community assets from his or her former spouse, instead of seeking it from the former spouse’s cohabitant. But, as the Supreme Court pointed out in
 
 Schnabel
 
 v.
 
 Superior Court
 
 (1993) 5 Cal.4th 704, 713-714 [21 Cal.Rptr. 2d 200, 854 P.2d 1117], we “did not. . . completely exclude the possibility of discovery [of financial records] from the third party.” On the contrary, we stated that . . some discovery of a third party’s financial records may be appropriate . . . [where, for example, said party] ... is suddenly living in sumptuous surroundings [or is] driving luxury cars ....’”
 
 (Harris
 
 v.
 
 Superior Court, supra,
 
 3 Cal.App.4th at p. 668.)
 

 It is true, Ms. DiGiovanni has not as yet taken her former husband’s deposition. Her reluctance stems from her belief that he is not truthful. Nevertheless, she is not barred from discovery, as it is undisputed that Ms. Babcock had acquired an interest in a $341,000 home and a $30,000 automobile despite being unemployed for several years.
 

 We conclude that the trial court acted well within its discretion in finding that Ms. DiGiovanni made a sufficient showing that Ms. Babcock may have been the beneficiary of community funds. No doubt the court disbelieved the assertions of Ms. Babcock and Mr. DiGiovanni that he was not the donor of any of the funds for the home or the automobile. Here, there was a sufficient showing to allow Ms. DiGiovanni to inquire into the source of these funds. (See
 
 Harris
 
 v.
 
 Superior Court, supra,
 
 3 Cal.App.4th at p. 668.)
 

 We now turn to the question whether respondent superior court should have reviewed in camera the documents which Ms. DiGiovanni wishes to discover.
 

 A party seeking the judicial prescreening of documents has the burden of showing good cause.
 
 (Schnabel
 
 v.
 
 Superior Court, supra,
 
 5 Cal.4th at p.
 
 *727
 
 714.) Given the nature of the documents sought, and the showing made by Ms. DiGiovanni, Ms. Babcock is entitled to an in camera inspection of her documents.
 
 (Schnabel
 
 v.
 
 Superior Court, supra, 5
 
 Cal.4th at p. 714;
 
 Harris
 
 v.
 
 Superior Court, supra,
 
 3 Cal.App.4th at p. 668.)
 

 Respondent court declined Ms. Babcock’s request for an in camera inspection because it did not have the time to engage in what it believed to be the prodigious task of sorting through a confusing array of financial records. In the return to the alternative writ, counsel for Ms. DiGiovanni characterized this task as daunting because the trial judge would not understand the importance of the documents he would be called upon to review. Nor would he be familiar with the sundry names of those persons or entities who may have deposited funds into Ms. Babcock’s bank account.
 

 It is true that reviewing a melange of loan and financial documents could be a Herculean task. Such an inspection could impose an undue burden upon a busy family law court. We join in the lament of our colleague who noted in
 
 In re Marriage of Ostler & Smith
 
 (1990) 223 Cal.App.3d 33, 38, footnote 4, [272 Cal.Rptr. 560], “that the courts are unable to give adequate time to sensitive family law matters.” As pointed out by the trial judge involved in
 
 In re Marriage of Helsel
 
 (1988) 198 Cal.App.3d 332, 336, footnote 2 [243 Cal.Rptr. 657], in any courthouse in a major metropolitan area in California, a family court’s morning calendar has anywhere from 15 to 30 items on order to show cause, temporary restraining orders and a variety of other matters.
 

 The trial court, however, has a remedy. As the appellate court pointed out in
 
 Tera Pharmaceuticals, Inc.
 
 v.
 
 Superior Court
 
 (1985) 170 Cal.App.3d. 530, 532 [215 Cal.Rptr. 923], “. . . judges should shift the burden [of proof] to counsel, where it belongs . . . .” Just as Dante had the services of the poet Virgil to guide him through the labyrinth of the Inferno, so too may the court require counsel for the deponent to act as its guide.
 

 Counsel for a deponent wishing to protect the privacy interests of his or her client bears the burden of assisting the court to conduct an in camera hearing. The deponent knows the importance and significance of the documents, and can identify the persons or entities who have deposited funds into the deponent’s bank account. In a declaration under penalty of perjury, the deponent can provide the court with a precise summary which explains the source of funds coming into the bank account, and which explains to whom checks are paid, and the purpose of such payment.
 

 Suppose, for example, the deponent’s parents wish to give her funds for the down payment on a house. The parents have another child whom they
 
 *728
 
 prefer not know about this gift. If the court has sufficient proof that the funds were supplied by the deponent’s parents, the court would undoubtedly disallow discovery. So too, would the court disallow discovery, for example, if the deponent showed that the funds came from a recently acquired inheritance.
 

 In the instant case, the trial court should order the financial records be presented in camera. If Ms. Babcock wishes to convince the court that her financial records are not discoverable, she may prepare for the court’s consideration, declarations under penalty of perjury explaining the details of all of those financial transactions over $1,000. The court is in the best position to decide how helpful are the declarations. If the court in its discretion, decides that the declarations do not adequately enlighten, then the court may order the discovery of the records.
 

 We are confident that where there are legitimate privacy concerns about records that have no relevance to the action, conscientious counsel will draft a concise summary for signature by the client, or other relevant declarant, explaining, under penalty of perjury, the source and expenditure of funds. Under these circumstances, the trial court’s burden should be relatively light.
 

 Protective Order
 

 Finally, there is the question of the need for a protective order. “[T]he third party deponent is
 
 presumptively
 
 entitled to a protective order that limits disclosure of financial information. [Citation.]”
 
 (Harris
 
 v.
 
 Superior Court, supra,
 
 3 Cal.App.4th at p. 668, italics added.) Thus, upon the ordering of disclosure of certain financial documents, the trial court is obliged to limit disclosure of “such information only for purposes related to the lawsuit, and only by persons having a legitimate interest in that information for such purposes. [Citations.]”
 
 (Moskowitz
 
 v.
 
 Superior Court
 
 (1983) 137 Cal.App.3d 313, 319 [187 Cal.Rptr. 4].)
 
 [1]
 

 “Simply because certain information is so important to the resolution of the issues in a lawsuit that the need for discovery of it overrides the right of privacy does not mean that all protection for it is lost. The one whose privacy is involved is presumptively entitled to a protective order limiting the use of the information to the litigation itself, and barring its dissemination for purposes not related to a fair resolution of the action.” (2 Hogan, Modern Cal. Discovery 4th (1988) § 12.28, p. 185.)
 

 
 *729
 

 Sanctions
 

 The imposition of sanctions was not warranted here.
 
 Harris
 
 envisions the case in which discovery of an ex-spouse’s living companion would be appropriate. Although this may be one of those cases, Ms. Babcock is entitled to a protective order. Her counsel tried to resolve the discovery dispute with opposing counsel. In a letter to Ms. DiGiovanni’s counsel, he stated, “I have offered to produce names, declarations and the paper trail of the monies used by my client, Jamie Babcock, to purchase the Toyota vehicle and her home. I will produce this information in camera, for you and Judge Hadden only.”
 

 There was a legitimate difference of opinion between counsel as to the applicability of
 
 Harris,
 
 and Ms. Babcock offered to produce the information in camera. We conclude that she acted in good faith and under circumstances that would make the imposition of sanctions unjust. (Code Civ. Proc., § 2023, subd. (b)(1); see
 
 McDonald
 
 v.
 
 John P. Scripps Newspaper
 
 (1989) 210 Cal.App.3d 100, 106 [257 Cal.Rptr. 473].)
 

 Let a writ of mandate issue ordering the respondent superior court to: (1) vacate its order of sanctions; (2) set aside its order in which it denied Ms. Babcock’s request for an in camera inspection and for a protective order; and (3) enter a new order that conforms with the views expressed in this opinion. The alternative writ is discharged and the stay is dissolved. The parties to bear their own costs.
 

 Stone (S. J.), P. J., and Yegan, J., concurred.
 

 A petition for a rehearing was denied November 23, 1994.
 

 [1]
 

 For an example of a protypical protective order, see
 
 In re First Peoples Bank Shareholders Litigation
 
 (D.N.J. 1988) 121 F.R.D. 219, 230. In that case, the trial court ordered disclosure of certain sensitive information upon condition that the materials could be discussed by counsel in consulting with their clients. Copies were not to be given to the clients, nor would any person be permitted to use such information for any purposes other than the current litigation.