Filed 5/2/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHARLES LI,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DEMAS YAN,<br><br>        Defendant and Appellant. | A144994<br><br>(San Francisco County<br>Super. Ct. No. CGC 10-497990) |

Appellant Demas Yan is an attorney.  Here, he appears as a judgment debtor, appealing from an "Order Re Subpoena Duces Tecum," an order made in the course of lengthy—and, from all appearances, unproductive—examination of judgment debtor proceedings attempted against him.  Yan makes two arguments, that:  (1) service of the subpoena requiring production of documents was improper, and (2) it was error to deny his claim of privilege as to tax returns.  We reject both contentions and affirm the order.

**BACKGROUND**

**The General Setting**

This is the second appeal by Yan, appeals arising out of a judgment in favor of Charles Li, awarding Li $552,412.30, including prejudgment interest.  The first appeal asserted that the amount of prejudgment interest was erroneous, an appeal we rejected in an unpublished opinion filed on January 28, 2016.  (*Li v. Yan* (Jan. 28, 2016, A140798) [nonpub. opn.] (*Yan I*).)

This appeal arises out of the efforts by Li's attorney to enforce that judgment, and particularly from an order made in the course of the lengthy proceedings involving examination of Yan as a judgment debtor.  The record in this appeal is unusual, in the sense that, while there is an appellant's appendix and a respondent's appendix, there is no

1

reporter's transcript, nor any real evidence—that is, sworn evidence in the trial court—in either appendix as to what in fact occurred. Two briefs from the trial court are in an appendix, but they contain no evidence of anything, only assertions as to what occurred, though Li's assertions are supported by various exhibits, assertions not disputed by Yan and accepted by the trial court.

**Li's Lawsuit and *Yan I***

To put the matter in context, we discuss generally the facts giving rise to Li's lawsuit and the judgment, many of which are from our opinion in *Yan I*, of which we take judicial notice. (*Hammell v. Britton* (1941) 19 Cal.2d 72, 75; *Gackstetter v. Market St. Ry. Co.* (1935) 10 Cal.App.2d 713, 716.)

Li is a 78-year-old Chinese-American, with limited English and experience with the legal system. Yan is, as noted, an attorney, who became a member of the bar in 2008. As described in Li's brief—a description, we are satisfied, that finds full support in the record—"Between 2007 and 2009, [Yan] induced [Li's] confidence and acted, first, while [Yan] was still a law student, as [Li's] unlicensed attorney and then, after [Yan] was admitted to the bar, as his formally-retained lawyer. Ignoring blatant conflicts of interest, [Yan] advised and represented [Li] in an underlying matter involving a contract in which [Yan] himself was the obligor and [Li] was the assignee. At one point, while [Yan] was serving as [Li's] attorney, he was simultaneously suing [Li] in a separate lawsuit related to the same contract."

That was the background of Li's lawsuit against Yan. It was filed in March 2010, and alleged claims for professional negligence, breach of fiduciary duty, unlawful business practices, breach of contract, and fraud. The case proceeded to a court trial before the Honorable Cynthia M. Lee. Judge Lee heard five days of testimony, following which she issued a lengthy, and comprehensive, statement of decision favorable to Li, initially awarding him $254,411.06, plus prejudgment interest. In that statement of decision, Judge Lee found, among other things, as follows:

"Yan began giving legal advice to Li in person, by telephone, and in extensive e-mail exchange. By then, Yan was a law student. He convinced Li that he had superior

2

strategy and knowledge of the law, coupled with personal knowledge of Fu and his former wife that placed him in a better position to advise Li than his attorney. Yan gave Li legal advice on document preparation, amendment of a party, additional causes of action, and deposition and discovery strategy. . . .

"On August 16, 2008, Li and Yan executed 'Lawsuit Assignment.' [Citation.] Yan persuaded Li that if assigned the lawsuit, Yan would be better able to control the suit and properly advise Li. Li relied upon Yan for legal counsel. The Lawsuit Assignment stated in pertinent part: [¶] 'Yan shall minimize any legal cost to Li before Yan getting [*sic*] his license by doing all the work he can carry on for said case. Once Yan is admitted to the State Bar as an attorney this assignment shall be replaced by a attorney-client contract on the same term as stated above with no requirement that Li pay a retainer.'

"The relationship between Li and [his] attorney Mousalam became frayed. Yan sowed the seeds of dissatisfaction and Li became convinced that Yan was giving him better legal advice and strategy. Mousalam withdrew as counsel on August 28, 2008 following a dispute about signing a new fee agreement. Yan instructed Li to represent himself until Yan was admitted to the Bar, which he expected to happen in December. Yan assured Li that he would advise him on the conduct of the suit until that time, when he would assume formal representation as Li's attorney. Li complied and was self-represented, with Yan giving him directions on how to proceed.

"On August 19, 2008, three days after the 'Lawsuit Assignment' was executed, Yan filed Yan v. Sui Ma, Charles Li, Tony Fu (Superior Court of San Francisco, CGC 08-478815). Li was aware that Yan planned to file a lawsuit against Li's former attorney in the Li v. Yan suit for malicious prosecution. Yan told [Li] he was going to name Li as a defendant only as a matter of legal procedure. Yan did not explain the conflict or the potential for liability . . . .

"Yan was admitted to the Bar in December 2008. The parties exchanged e-mails and signed a fee agreement for Yan's representation on January 26, 2009. Yan repeatedly told Li the assignment was unenforceable because of the termination of the

3

contract and Fu's unlicensed contractor status and urged pursuing the fraud case against Fu. On March 20, 2009, Li and Fu participated in an Early Settlement Conference on the case. During the conference, a mediator opined that the Assignment was enforceable against Yan and raised this conflict of interest in Yan's representation. The mediator disclosed a second conflict of interest in that Yan had filed Yan v. Sui Ma, Charles Li, Tony Fu, et al . . . . Yan never disclosed the conflict or obtained a written conflict waiver arising from either circumstance. Li terminated Yan as his attorney two days later. Li v. Fu was settled on March 23, 2009. Yan dismissed Li only from Yan v. Ma, Li, Fu, et al on the same day without prejudice.

"Li hired new counsel and attempted to reinstate Li v. Yan (I) and the claim in Bankruptcy Court, but was unsuccessful in each forum. He was denied relief under Cal. Code of Civil Procedure section 473 due to his delay in requesting relief. The petition for reinstatement of his claim in Bankruptcy Court was denied for [a] similar reason . . . .

"On November 15, 2011, The State Bar of California notified Yan of disciplinary proceedings. The charges included violation of Rules of Professional Conduct, rule 3-310(C)(3)—conflict of interest relating to failure to disclose the conflict and obtain informed written consent to the potential conflict of interest from Li, and violation of Business and Professions Code section 6068(a)—the Unauthorized practice of law relating to Yan's legal counsel to Li during the pendency of Li v. Fu, prior to Yan's admission to the Bar. Defendant stipulated to the facts in a 'Stipulation Re Facts, Conclusions of Law and Disposition' filed March 16, 2012 relating to the conflict and failure to provide a written disclosure and informed written consent to the potential conflict."

Judge Lee's statement also included extensive discussion of the testimony of Li's expert witness Merri Baldwin, an expert in legal ethics familiar with the standard of care in the community. The statement devoted over three pages to a description of Baldwin's testimony supporting her expert opinion, which, as described by Judge Lee, was that "(1) Yan failed to meet the standard of care and fiduciary duty in his representation of Li

4

because of the conflicts of interest, (2) Yan failed to meet the standard of care in the handling of the case, particularly in the action involving Fu, and (3) Yan had engaged in the unauthorized practice of law prior to his admission to the Bar, in his dealings with Li."

Following posttrial proceedings, on November 13, 2013, Judge Lee filed a second amended judgment awarding Li a total of $552,412.30, including $149,667.29 in prejudgment interest. Yan appealed, and, as noted, we affirmed that judgment in *Yan I*.

**The Subject Appeal**

This appeal arises out of Li's efforts to examine Yan as a judgment debtor, as provided for generally in Code of Civil Procedure section 708.110, et seq.

As indicated, the record before us is sparse, so we do not know all the details of Li's efforts to examine Yan as a judgment debtor. The first reference in the record is the issuance of an order of examination on May 15, 2013. We also have partial transcripts of at least four sessions of examination of Yan, on June 4 and 18, 2013, on April 21, 2015 (a session before the court), and on April 30, 2015.

On May 15, 2014, Li obtained a second order of examination. According to the representation in Li's brief—a representation with which Yan does not take issue—Yan "could not be located for personal service. In the parallel fraudulent transfer action [Li] had to file against Mr. Yan and several of his relatives and related companies (*Li v. Chiu, et al.*, San Francisco Superior Court No. CGC-14-537574), [Li] made multiple unsuccessful attempts to serve summons at Mr. Yan's business address, [citation], the same one he puts in the caption of his Appellant's Opening Brief. He has testified that he is not a tenant at that address, rarely goes there, and uses it only as a mailing address as a favor from a colleague. [Citation.] [¶] Mr. Yan could not be personally found at his residence either, and summons in the fraudulent transfer action was served to him there by substitute service. [Citation.] Respondent asked Mr. Yan by e-mail if he would make arrangements to accept personal service of the Order of Examination. He refused. [Citation.]"

5

So, Li continues, he "had to reschedule the examination session. [Li] anticipated serving Yan with the Order of Examination at a court appearance in December 2014 for an examination then set for January 15, 2015. Due to the differing notice periods required for a debtor's examination and a document request, [Li] served the subject subpoena to Mr. Yan by mail on December 12, 2014. [Citation.] [Yan] does not deny that he received the mail service. [Li] could not actually accomplish personal service of the Order of Examination until January 15, 2015, and thus the date had to be changed again. [Citation.]"

Somewhere along the way, Yan apparently asserted some claim about some aspect of the process, as on March 16, 2015, the trial court filed an "order setting further examination of judgment debtor; setting of briefing schedule re: subpoena duces tecum." The order provided in its entirety as follows:

"The matter of the Order of Examination of judgment debtor Demas Yan was heard on March 11, 2015, in Department 514, before the Honorable Charles Crompton, Judge of the Superior Court. Duy Thai appeared on behalf of plaintiff and judgment creditor Charles Li. Judgment Debtor Demas Yan appeared in pro per.

"Having reviewed the submissions and heard the arguments of the parties, the Court hereby ORDERS as follows:

"1.     The examination of Demas Yan shall continue on April 21, 2015, at 2:00 p.m., in this Department 514 of this Honorable Court.

"2.     The parties shall submit letter briefs, to be filed and received in Department 514 before 4:00 p.m. on April 7, 2015, regarding the enforceability of the subpoena duces tecum attached hereto as Exhibit A, including any issues on effectiveness of service or objections to specific requests.

"3.     The Court shall issue an order by April 14, 2015 as to what documents, if any, judgment debtor Demas Yan shall produce pursuant to the subpoena.

"4.     Any documents ordered to be produced shall be served upon attorney Duy Thai in a manner that ensures delivery no later than April 19, 2015."

6

The parties filed the briefs. Li's brief, as noted above, had seven exhibits supporting the various factual assertions.

On April 16, 2015, Judge Crompton issued his order, holding as follows:

"The Court has reviewed the parties' submissions regarding the enforceability of the subpoena *duces tecum* that Plaintiff Charles Li served by mail on Judgment Debtor Demas Yan on December 12, 2014.

"Plaintiff's subpoena was properly served by mail. Contrary to Judgment Debtor's argument, personal service was not required. *See* Cal. Civ. Proc. Code §708.030(a). Plaintiff has submitted copies of the parties' email exchanges showing that Plaintiff made extraordinary efforts to serve Judgment Debtor and that Judgment Debtor acted evasively and uncooperatively.

"Judgment Debtor has objected to every single request in Plaintiff's subpoena. Judgment Debtor's objections are neither adequately detailed nor based on a sufficient showing to outweigh Plaintiff's right to discover relevant facts. *See Hooser v. Superior Court*, 84 Cal.App.4th 997, 1003 (2000).

"Accordingly, IT IS ORDERED THAT

"Judgment Debtor must produce all documents responsive to the subpoena *duces tecum* at the Order of Examination set for April 21, 2015. If Plaintiff needs additional time to complete the Order of Examination because the documents were not provided sooner, then an additional session will be authorized."

On April 24, Yan filed a notice of appeal.

### DISCUSSION[1]

### Yan's Claim of Improper Service Has No Merit

Yan's first argument is that he was not properly served, an argument that relies principally on Code of Civil Procedure section 1987, subdivision (a), which provides in relevant part: "Except as provided in Sections 68097.1 to 68097.8, inclusive, of the

---

[1] We will assume that the order is appealable. (Compare *Macaluso v. Superior Court* (2013) 219 Cal.App.4th 1042, 1048, and *Fox Johns Lazar Pekin & Wexler, APC v. Superior Court* (2013) 219 Cal.App.4th 1210, 1215–1216.)

7

Government Code, the service of a subpoena is made by delivering a copy, or a ticket containing its substance, to the witness personally . . . ."

Then, citing—perhaps more accurately, misciting[2]—a passage from an old edition of a practice treatise, Yan asserts as follows: "As explained in Matthew Bender, *California Debt Collections and Enforcement of Judgments*, § 10.13 (2006): [¶] In order to conduct postjudgment discovery, the court must have in personam jurisdiction over the parties against whom discovery is sought. Postjudgment jurisdiction over persons differs from the proceedings after initial service and prior to entry of judgment, in particular as to the judgment debtor, because there may be no attorney of record to serve, and if a long period of time has elapsed, it is necessary to confirm the location of the judgment debtor. A postjudgment proceeding is like beginning a new action even though it bears the same case number as the judgment. . . ." And, Yan sums up, "Thus, a subpoena directed at the debtor must comply strictly with the statute and must be served personally to acquire personal jurisdiction over the person. Here, the subpoena was not properly served, and therefore the court has not acquired personal jurisdiction over debtor."

Li responds that service was proper because Yan was a party properly served to appear, and the subpoena only asked for documents to be produced at his debtor's examination. Put otherwise, Yan's appearance was compelled by the order of examination that was personally served—service Yan does not challenge—and a judgment creditor may obtain documents from a judgment debtor either by subpoena duces tecum or by a discovery request for production. (*Lee v. Swansboro Country Property Owners Assn.* (2007) 151 Cal.App.4th 575, 580; Code of Civil Procedure

---

[2] Yan's citation from the treatise contains an ellipsis, the effect of which is to make Yan's citation less than accurate. Beyond that, the most recent edition of the treatise says "most service on the judgment debtor may be made by mail [*see* CCP §700.010(b)]." (1 Matthew Bender, Practice Guide: Cal. Debt Collection and Enforcement of Judgments (2015) ch.10.13.)

section 708.030.)[3]  In other words, document requests to a judgment debtor can be propounded and served in the same way as pretrial discovery.

This, as noted, is what Judge Crompton concluded.  And Yan does not demonstrate that the conclusion was incorrect.

But even assuming he could, that is, show that there was a defect in the process, it would not avail him, in light of the fact that he appeared and was examined on at least two occasions in 2015.  Such constitutes a waiver of any claimed jurisdictional defect, as it has for many other parties who had proceeded in the face of claimed procedural deficiencies.

In *D.H. Overmyer Co. v. Frick Co.* (1972) 405 U.S. 174, 185–186, the United States Supreme Court held that constitutional and statutory requirements regarding service exist for the defendant's protection, and are therefore subject to waiver.  And by making an appearance in the action, defendant submits to the court's personal jurisdiction, and no service is required.

Numerous courts have applied this rule, including ourselves, holding that " 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' " (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 776, quoting *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1117; *Ferraro v. Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 44 [compulsory joinder waived by failure to object].)

**Tax Returns Must Be Produced**

Yan's second argument contends that Judge Crompton erred in denying Yan's claim of privilege as to tax returns.

---

[3] Code of Civil Procedure section 708.030 provides that:  "The judgment creditor may demand that any judgment debtor produce and permit the party making the demand . . . to inspect and to copy a document that is in the possession, custody, or control of the party on whom the demand is made in the manner provided in Chapter 14 (commencing with Section 2031.010) of Title 4 of Part 4, if the demand requests information to aid in enforcement of the money judgment."

9

"Judgment debtor examinations serve an important function in our judicial system." (*Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 172.)  The examination is to uncover all assets the judgment debtor has that could respond to the judgment—to "leave no stone unturned in the search for assets . . . ." (*Ibid.*)  As our colleagues in Division One described it long ago, a description still accurate today, "The object of the proceeding is to compel the judgment debtor to give information concerning his property; and such judgment-debtor examination is intended to be summary and factual, according the widest scope for inquiry concerning the property and business affairs of the judgment debtor.  [Citations.]  The purpose of such supplementary proceedings is to discover and reach assets of a judgment debtor so as to apply them to the satisfaction of the judgment.  [Citations.]" (*Kyne v. Eustice* (1963) 215 Cal.App.2d 627, 632.)

In *Troy v. Superior Court* (1986) 186 Cal.App.3d 1006, 1014, a judgment debtor petitioned for relief to restrain enforcement of a contempt order entered against him after he refused to answer questions at examination, citing his privilege against self-incrimination, the marital privilege, and relevancy.  The Court of Appeal denied the petition, concluding as follows:  "[T]he purpose of a judgment debtor examination is to leave no stone unturned in the search for assets which might be used to satisfy the judgment."

Those principles and policies lead to our conclusion here—Yan must produce his tax returns.

The law was collected in *Weingarten v. Superior Court* (2002) 102 Cal.App.4th 268, 274 (*Weingarten*):  "There is no recognized federal or state constitutional right to maintain the privacy of tax returns.  (See *Couch v. United States* (1973) 409 U.S. 322, 336-337; *Deary v. Superior Court* (2001) 87 Cal. App. 4th 1072, 1075, fn. 2, 1077-1078.)  California courts, however, have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns.  (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718-721 (*Schnabel*); *Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 513.)  The purpose of the privilege is to encourage voluntary filing of tax returns and truthful

reporting of income, and thus to facilitate tax collection. (*Webb v. Standard Oil Co., supra,* 49 Cal.2d at p. 513.)"

However, as *Schnabel* held, and *Weingarten* confirmed, the "privilege is not absolute." (*Schnabel, supra,* 5 Cal.4th at p. 721.) Rather, the privilege "will not be upheld" in three situations: when (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved. This last exception is narrow and "applies only 'when warranted by a legislatively declared public policy.' " (*Weingarten, supra,* 102 Cal.App.4th at p. 274.)

Finding the third situation applicable there (where defendant had been held liable for punitive damages), the *Weingarten* court summed up its holding as follows: "In reaching our conclusion the trial court did not abuse its discretion, we caution against compelled disclosure of personal tax returns except in those rare instances where the public policy underlying the tax privilege is outweighed by other compelling public policies or where waiver principles apply. The fact that financial records are difficult to obtain or that a tax return would be helpful, enlightening or the most efficient way to establish financial worth is not enough. Likewise, standing alone, a finding of liability for punitive damages is insufficient. But disclosure may be ordered where a defendant has been found liable for punitive damages and the party requesting disclosure establishes (1) the defendant has refused to produce relevant nonprivileged financial records or has produced only meaningless and unreliable financial information in response to punitive damage discovery; (2) the defendant has engaged in a pattern of improperly obstructing efforts to obtain financial records through means that do not implicate the privilege and it is reasonable to assume this pattern of conduct will continue; and (3) less intrusive methods to obtain the financial records have been unsuccessful. Although the trial court did not specifically articulate these factors, upon reviewing the entire record before us, we are satisfied the trial court found each of these factors existed before ordering production of the tax returns." (*Weingarten, supra,* 102 Cal.App.4th at pp. 276–277.) The same rationale applies here.

11

According to Li, in the fraudulent conveyance action filed against Yan, Yan contends "that he conveyed real estate to his relatives, either in 2004 or 2007 or 2012 (the story keeps changing)." And also according to Li, under Yan's own theory of such transfer, Yan "realized a substantial capital gain in the purported transaction . . . . [And has] never informed the lender that holds up to $1 million in mortgage on the same property, and he may still be taking the interest deductions thereto. The tax returns would shed light on whether such transfer actually happened . . . . [In one . . . fraudulent transfer case, a debtor's deduction of interest and other expenses relating [to] real property on her federal tax returns was viewed as evidence that the property still belonged to her, not to the relative to whom she had transferred title.] *In re Roca* (2009) 404 B.R. 531, 539."

In sum, there is a strong public policy here, beyond only leaving no stone unturned. That policy is to prevent fraud against creditors. And against lenders. And perhaps against the court.

As indicated above, Yan's story includes some claimed transfer(s) to members of his family, who may be complicit in Yan's machinations. As we noted in *Yan I*, a bankruptcy panel rejected two appeals by relatives of Yan who had filed claims in his bankruptcy. The appeals were by Yan's father, sister, and brother-in-law. In a six-page decision that discussed the history of the claims, the bankruptcy panel ended its decision with this:

"C. Bankruptcy Aspects

"Besides a lack of proof, overriding bankruptcy principles would also support the bankruptcy court's decision to disallow of Appellant's claims under the circumstances of this case. *In re Murgillo* [(Bankr. 9th Cir. 1994)] 176 B.R. [524,] 533. The record supports the bankruptcy court's explicit concern regarding the timing of Appellants' claims, i.e., that they served no valid bankruptcy purpose, but, instead, were strategically filed so that debtor could avoid paying his postpetition Judgment Creditors who had attached the surplus of this estate.

12

"Further, debtor presented a myriad of changing stories in this case. Full disclosure in the bankruptcy schedules is essential to satisfy a significant purpose: That adequate information be available to the trustee without the need for investigation into whether the information is true. Debtor did not list Chiu's claim in his schedules, which were signed under penalty of perjury. Yet, debtor later declared under penalty of perjury that he owed the money when Chiu filed his tardy claim. Moreover, debtor listed his father's claim as $38,000, but he later admitted that he did not list the full amount of debt because he did not want to create the appearance of questionable large claims from relatives. Debtor's failure to fully and adequately disclose not only has serious consequences, but his change in position demonstrates an intent to play fast and loose with the court, thereby prejudicing the trustee's administration of his estate. Had debtor listed the claims of his relatives as required, the trustee would have, before the Final Account, liquidated other assets to assure distribution to all creditors. Instead, she was prepared to abandon the assets to debtor.

"This later point directly relates to debtor's role in this appeal. His representation of Chiu and Yan as their attorney is truly troubling to this Panel. Where a debtor is a creditor's attorney, the conflict of interest involved is obvious. How can the debtor, as lawyer, advise his clients fully and effectively when the lawyer himself is on the other side of the bargaining table? Allowing Appellants' claims in full would compel the trustee to liquidate more of the to-be-abandoned estate, an obvious negative result to debtor." (Fn. and bold type omitted.)

We cannot overlook such conduct.

Beyond all that, Yan's answers at the examinations are less than forthcoming—and, frankly, hard to believe. A few examples should suffice:

Yan testified he sold his membership in an LLC to two persons for $650,000, but could not remember their names.

Yan testified that his mother provided him checks, but could not remember: whether the checks numbered more than a hundred; when the most recent check was received; or when his mother last worked or her last job.

13

Yan testified that he was the sole support for his children, supported solely by his income, which for 2014 was "less than [$]10,000." The support included rent, which included $8,400 in 2014, but he refused to provide the identity of the person to whom the rent was paid. Yan was asked the source of the money to pay his children's rent, and he said it was from his "income." Asked if that was from legal fees, Yan said, "I don't know."

Enough is enough.

*Weingarten* held that any privilege for tax returns yielded to the policy behind the discovery allowed to support punitive damages. There, Weingarten did not produce the standard documents. Rather, as described by the Court of Appeal, "[I]nstead of producing these standard documents, Weingarten continued to refuse to produce any credible financial information and instead claimed she had already disclosed all information relevant to her current financial condition, relying on her admittedly outdated financial statement. By so acting, Weingarten intentionally interfered with plaintiffs' ability to obtain relevant information through legitimate means, and then sought to hide behind the tax return privilege to ensure no relevant information would be revealed to plaintiffs." (*Weingarten, supra,* 102 Cal.App.4th at p. 275.)

Further, and perhaps apropos to Yan here—whose conduct at various sessions of examination has necessitated appearances before the courts—is this additional observation from *Weingarten*: "Weingarten's refusal to produce relevant financial information was not an isolated incident. The independent calendar trial judge, who was intimately familiar with the case and Weingarten's conduct during discovery, was aware that Weingarten had engaged in the same type of evasive and bad faith activities regarding her financial matters . . . . The trial court was aware that Weingarten repeatedly disregarded these fundamental principles, and acted as if she were exempt from discovery rules." (*Weingarten, supra,* 102 Cal.App.4th at pp. 275–276.)

"A trial court has broad discretion in determining the applicability of a statutory privilege." (*Weingarten, supra,* 102 Cal.App.4th at p. 274, citing *National Football*

*League Properties, Inc. v. Superior Court* (1998) 65 Cal.App.4th 100, 106–107.)  That discretion was not abused by Judge Crompton here.

## DISPOSITION

The order is affirmed.  Li shall recover his costs on appeal.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

A144994; *Li v. Yan*

16

Trial Court:                                    San Francisco County Superior Court

Trial Judge:                                    Hon. Charles Crompton

Attorney for Plaintiff and Respondent:          Duy Quoc Thai

Attorney for Defendant and Appellant:           Demas Yan, in pro. per.