Filed 8/24/20  Marriage of Tsatryan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of ARTHUR and POLINA TSATRYAN. | B293433 (Los Angeles County Super. Ct. No. BD512645) |
| ARTHUR TSATRYAN, Appellant, v. POLINA TSATRYAN et al., Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen M. Lowry, Commissioner, and Gregory J. Weingart, Judge.  Affirmed in part, dismissed in part.

Arthur Tsatryan, in pro. per., for Appellant.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Linda M. Gonzalez and Ricardo

Enriquez, Deputy Attorneys General, for Respondent Los Angeles County Child Support Services Department.

No appearance for Respondent Polina Tsatryan.

_____

**INTRODUCTION**

This is the 11th appeal by Arthur Tsatryan[1] in this marital dissolution action.  On May 21, 2015 the family court entered a judgment of dissolution of Arthur and Polina's marriage.  Among the issues resolved by the judgment were custody, visitation, and support of their son Alexander.  We affirmed the judgment.  (*In re Marriage of Tsatryan* (Feb. 13, 2018, B265467) [nonpub. opn.].)

Arthur now appeals from a September 7, 2018 postjudgment order denying a motion filed by the Los Angeles County Child Support Services Department (Department) to modify Arthur's child support obligation (modification motion).  Arthur contends he was entitled to a reduction of his support obligation because Polina's income is greater than the amount used to calculate prior support orders, and Arthur now has no income and is disabled.  Arthur also contends he was denied a fair hearing because the family court denied the modification motion without ordering Polina to produce her tax returns and allowing Arthur to file a supplemental brief.  We affirm the September 7, 2018 order.

_____

[1]    As with our previous opinions in this matter, we refer to Arthur and Polina Tsatryan by their first names for the sake of convenience and clarity, intending no disrespect.

Arthur has also appealed from a September 5, 2018 family court order denying Arthur's request for a change in child custody, visitation, child support, and for other relief, but he subsequently abandoned his challenge to this order. We dismiss Arthur's appeal as to the September 5, 2018 order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.     *The Petition for Dissolution and Judgment*

Arthur and Polina were married on August 5, 1987. They separated on August 3, 2009, and Arthur filed a petition for dissolution of marriage on September 23, 2009. At the time Arthur filed the petition for dissolution, Alexander was a minor.[3] (*In re Marriage of Tsatryan, supra*, B265467.)

After a three-day trial on custody issues and a two-day trial on property division and child support, on May 21, 2015 the family court[4] entered a judgment of dissolution (judgment) awarding Polina sole legal and physical custody of Alexander with Arthur to have visitation on the first and third weekends of each month and the parties to divide holidays and school breaks.

---

[2]     In our discussion of the factual and procedural background of the case, we focus on the proceedings relevant to this appeal. We discuss the earlier proceedings leading up to the judgment of dissolution in *In re Marriage of Tsatryan* (Nov. 9, 2016, B262680) (nonpub. opn.).

[3]     Alexander was born on January 19, 2001 and turned 18 on January 19, 2019.

[4]     Judge Mark A. Juhas presided over the custody trial and signed the dissolution judgment.

The court ordered Arthur to pay $507 per month in child support based on a Dissomaster[5] guideline and the court's findings Polina had an annual income of $75,000 and Arthur had a monthly income of $4,500 ($54,000 annually). Arthur appealed the judgment, and we affirmed. (*In re Marriage of Tsatryan, supra*, B265467.)

B.     *Postdissolution Child Support Orders*

On December 19, 2016 Arthur filed a request to modify child custody, visitation, and child support.[6] At the February 7, 2017 hearing,[7] Arthur argued his child support obligation should be reduced because Polina's annual income had increased from $75,000 to $130,000, but he did not provide evidentiary support for this assertion, and Polina's income and expense declaration filed on January 9, 2017 stated her average monthly gross pay was $6,200 ($74,400 annually). On March 15, 2017 the family

---

[5]     California's statewide uniform guideline for child support utilizes a formula that accounts for each parent's net income and timeshare with the child. (Fam. Code, § 4055.) Dissomaster is a computer software program widely used by courts and the family law bar in setting child and spousal support pursuant to the statewide uniform guideline and local rules. (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, fn. 3.)

[6]     Our discussion of Arthur's December 19, 2016 request to modify custody, visitation and support is taken from our earlier opinion in *In re Marriage of Tsatryan* (Jan. 14, 2019, B281633) (nonpub. opn.).

[7]     Judge Shelley Kaufman.

court issued a written ruling denying Arthur's request to modify the custody and child support orders.[8]

On March 16, 2017 Arthur filed another request to modify child support asserting that in setting child support under the judgment, the family court erroneously calculated Arthur's income at an amount above his actual income and Polina's income at an amount lower than her actual income. Arthur asserted Polina earned about $130,000 per year, and he filed printouts from the Internet Web site Transparent California stating that in 2015 Polina, who was employed by the County of Los Angeles as a software application developer, had "regular pay" of $84,370.09, "total pay" of $89,054.28, and "total pay and benefits" of $122,759.25. The Department's responsive declaration requested that "all orders to remain in full force and effect, or increase, if appropriate, pursuant to state guidelines." The Department argued Arthur did not submit his tax returns with his request; Arthur failed to demonstrate any changed circumstances; and the request improperly sought to modify the judgment retroactively. Arthur filed a declaration in response attaching income tax returns from 2007 through 2016 and noting his annual income had not exceeded $15,000 during that period.[9] He also stated the divorce proceedings had adversely impacted his health. He submitted medical records showing he was diagnosed in October 2014 with generalized anxiety disorder and

---

[8]    Arthur appealed from the denial of his request to modify child custody, and we affirmed. (*In re Marriage of Tsatryan, supra*, B281633.) Arthur did not appeal the trial court's denial of his request to modify child support. (*Ibid.*)

[9]    Arthur's federal income tax returns showed an adjusted gross income of $10,721 in 2015 and $13,925 in 2016.

major depression, recurrent, and placed off work from October 22 to November 12, 2014. On March 29, 2017 Arthur visited his physician to review his diagnosis for depression and anxiety.

On May 24, 2017 Polina filed an income and expense declaration reporting $7,800 in monthly income and estimating Arthur's gross monthly income at $4,500.

After a hearing, the family court[10] on June 20, 2017 entered an order increasing Arthur's child support obligation from $507 to $636 per month. The court found Arthur's income of $4,500 per month had not changed and Polina's income had increased, but Arthur's custodial timeshare had decreased to 1 percent. The court calculated guideline support based on Polina's monthly income of $9,908 ($118,896 annually), Arthur's monthly income of $4,500, and Arthur's 1 percent timeshare with Alexander.

On January 18, 2018 the Department filed a motion to modify child support requesting Arthur's child support obligation "be modified to [z]ero" because Arthur had received a "needs-based cash grant." No party appeared at the hearing noticed for March 9, 2018, and the family court took the motion off calendar.

C.    *May 2018 Motion To Modify Child Support*

On May 31, 2018 the Department filed another motion to modify child support. Unlike the prior motion to reduce child support to zero, the notice of motion did not request a specific support amount, instead stating "the amount the court will order will be based upon information presented at the hearing." The Department's supporting declaration stated, "There has been a change in the person paying support's and/or person receiving

---

[10]    Commissioner Armando Duron.

6

support's earnings or other income." The Department attached Polina's income and expense declaration dated March 30, 2018, in which Polina stated her average monthly income was $7,400 and her income in the prior month was $7,980. Polina estimated Arthur's gross monthly income was $4,500. The Department also served Arthur with a notice to produce pay stubs for the last 12 months, the last two years of federal and state income tax returns, an income and expense declaration, and "documentation of any hardship or other deductions being requested by [Arthur]."

On June 19, 2018 Arthur filed a motion to continue the hearing because Arthur had plans to visit his family in Russia for several weeks. Arthur stated in his declaration that his brother had purchased the airline ticket for him because Arthur suffered from generalized anxiety disorder and major depressive disorder "d[u]e to [the] ordeal he is going through in the divorce with Polina . . . , child alienation and not be[ing] able to see his child for more than 3 years." Arthur added that his trips to Russia helped him "[t]o get away from [the] hostile environment [and] help me to cope with the stress and depression."[11] Arthur attached medical records showing he visited his physician on May 10 and June 13, 2018 concerning his prior diagnosis of generalized anxiety disorder and recurrent major depressive disorder. The family court granted Arthur's motion and

_____

[11] Arthur's brother Karen Tsatouryan also submitted a declaration stating, "I and our family strongly believe that Arthur . . . needs a brake [*sic*] in order not to let the pressure of the stress and the divorce procedure to kill him. . . . I bought a ticket for him with his promise to refund me at a first opportunity to do so."

continued the hearing on the modification motion until August 23, 2018. On July 2, 2018 Arthur filed an income and expense declaration stating he had monthly income of zero.[12] Arthur did not produce pay stubs, recent tax returns, or documentation describing his medical condition or asserted disability.

D. *August 23, 2018 Hearing on Motion To Modify Child Support and Order*

Arthur, Polina, and the Department appeared at the August 23, 2018 hearing before Commissioner Lowry. Arthur and Polina were self-represented. At the outset, staff counsel for the Department advised the family court Arthur "is [a] recipient of general relief since November of 2017, and [Polina] is opposed to a zero child support order as she feels he should be working and contributing for the welfare of the child."

---

[12] On July 2, 2018 Arthur filed a request to modify child custody, visitation, child support, and for other relief in the family court, seeking sole legal and physical custody of Alexander on the asserted grounds Polina had prevented Alexander from visiting Arthur and Alexander's academic performance and involvement in extracurricular activities had suffered under Polina's care. Judge Gregory J. Weingart denied Arthur's request after a hearing on September 5, 2018. Arthur filed a notice of appeal from the ruling, but in his opening brief he conceded, "Arthur will not argue the issue of the custody . . . order of [the] Superior Court of September 5, 2018, since [Alexander] reached age of 18 on January 19, 2019." We dismiss Arthur's appeal as to the family court's September 5, 2018 order.

When the court inquired whether Arthur's income had changed since the 2017 finding his monthly income was $4,500, Arthur responded the family court erred during trial because it did not consider his income tax returns and instead based its finding on mortgage payments Arthur made on two homes. Arthur testified he "was borrowing money from [his] friends and family" to pay the mortgages so as "not to [lose the] investment." He was "now not making money at all" because he "lost [his] business and cannot work." Prior to his separation from Polina, Arthur owned a construction business, but his health deteriorated, he was unable to continue working, and his contractor's license lapsed due to nonpayment. Arthur was last employed as a caretaker for his mother through an in-home support services (IHSS) program, but he stopped working in March 2017 because his mother, who is also disabled, could no longer get into his vehicle and therefore hired someone else.

Arthur testified he drove a 1998 Econoline van, which he filled up with gas two times a month. When asked by the Department's attorney how he paid for gas, Arthur responded, "I am getting that money from my relative[s], my mother, my sister, and I have [a] credit card of my mother which I use." Arthur added, "[M]y sister help[s] me, my brother help[s] me, all my family support[s] me." When the Department's attorney asked Arthur how much his brother had given him in the prior month, Arthur responded, "roughly probably around maybe $800, something like that." Arthur lived with his sister to whom he paid $200 per month in rent with funds he received from general relief. Arthur's family members also paid for Arthur to make about two trips each year to Russia. His most recent trip lasted 20 days. With respect to Polina's income, Arthur testified he

learned in 2016 that Polina was a county employee, and "she was making [$]120,000 per [the Transparent California] website." Arthur added, "since [the] beginning of my dissolution process, I have not seen [Polina's] tax return."

Polina testified she earned $90,000 per year as a county employee, received health insurance from the county, and paid union dues. Polina stated Arthur did not visit with Alexander and had seen Alexander only once since 2015, despite a visitation order providing Arthur with weekend visitation. Polina believed Arthur was still working in construction based on the fact his company, Art's Flooring Incorporated, was still registered and Arthur's nephew recently worked with Arthur. But Polina admitted she did not personally know what work Arthur had been doing since 2015. Polina expressed skepticism as to Arthur's claimed disability: "He says that he doesn't have money to work. Whatever happened? I see he has legs. He has arms. He has head. He goes to court every week, family court and civil court. . . . I don't know how he is driving there. . . ." Polina testified Arthur's "family buys him ticket[s] to go to Russia for two months four times a year. His family feed[s] him, whatever, give[s] money for everything. He goes to court, harass[es] people over there, and now he is complaining that he cannot work." Polina opined Arthur "doesn't want to work because he has [a] perfect life."

At the conclusion of the testimony, the Department's attorney stated, "this is [the Department's] motion to modify. Perhaps the court would just deny it or take it off calendar." The family court indicated, "I think that is best," but it allowed Arthur to provide additional testimony. With respect to his alleged disability, Arthur testified, "My doctor made [a]

statement and I share[d] [it] with [the] attorney, I cannot work." The court inquired as to the nature of his disability, to which Arthur responded, "You have to ask my doctor. My family sent me to Russia because here I am very depressed and mourning my son which I cannot see, and this son was raised by me. . . ." The court pressed Arthur for more information about his disability, to which Arthur responded, "I can show you the paper from my doctor. . . . They say disability. I don't know why. You have to ask [my] doctor. I am not an expert in medical [matters]." Arthur stated he suffered from depression and was "depressed because of your procedure." The court stated, "Well, that makes you like everybody else in the United States. Everybody in the United States is depressed." Arthur responded, "But not everyone get[s] disability." When the court inquired if Arthur was receiving disability payments, Arthur initially responded yes but then clarified, "I am not getting money for disability. I am on disability. That is what I stated, and I show the paper to the attorney."

At the conclusion of the hearing, the family court denied the motion to modify child support, stating "[t]he child support order will remain in place."[13] On September 7, 2018, the court filed an order after hearing summarily denying the motion without stating any findings. Arthur did not request and the court did not issue a statement of decision. Arthur timely appealed.

---

[13] On August 30, 2018 Arthur filed a notice of objection, requesting a de novo hearing. In his memorandum and declaration, Arthur objected to Polina's failure to provide tax returns in connection with the court's 2015 support order, and he

**DISCUSSION**

A.    *Standard of Review*

We review a family court's order granting or denying child support for an abuse of discretion.  (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527 (*Macilwaine*); *In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753.)  "Under this standard, we consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.'  [Citation.]  'We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.'"  (*Macilwaine*, at p. 527; accord, *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.)  "On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference.  [Citation.]  We

---

filed numerous exhibits purporting to show the family court erred in calculating Polina's and Arthur's income in 2015.  Arthur also challenged the family court's denial of two motions filed in 2016 to vacate the judgment based on Polina's failure to provide her tax returns.  However, Arthur previously appealed the denial of the motions, and we affirmed.  (*In re Marriage of Tsatryan* (Feb. 11, 2019, B269812) [nonpub. opn.].)  Arthur also objected to the family court's August 23 ruling on the ground the court refused to consider "a document that [Arthur] is on disability due to depression and stress," instead simply stating "'half of America is under depression.'"  Arthur claimed the court was biased against him because he had alleged his former attorney was romantically involved with Polina's former attorney.  The record does not reflect the disposition of Arthur's notice of objection.

accept all evidence favorable to the prevailing party as true and discard contrary evidence." (*Drake*, at p. 1151; accord, *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 230.)

However, a different standard applies where, as here, the appellant had the burden of proof in the trial court.  "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citation.]  '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'" (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979 (*Juen*); accord, *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)  "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen*, at p. 979; accord, *Glovis America, Inc. v. County of Ventura* (2018) 28 Cal.App.5th 62, 71; *Dreyer's Grand Ice Cream, Inc.*, at p. 838.)  "'[W]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor.'" (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734; accord, *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)  "That is because unless the trial court makes

13

specific findings of fact in favor of the losing [party], we presume the trial court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof.  [Citations.]  We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence."  (*Bookout*, at p. 1486.)

In reviewing a support order, we are also "'mindful that "determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule."'"  (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1312; see *Macilwaine, supra*, 26 Cal.App.5th at p. 527 ["'[T]he trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support."'"].)  Accordingly, "[t]o decide whether the trial court followed established legal principles and correctly interpreted the child support statutes, we apply the independent standard of review."  (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 731.)

B.    *Changed Circumstances Rule*

"As a general rule, courts will not modify child or spousal support unless there has been a material change of circumstances following the previous determination."  (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357 (*Usher*); accord, *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1048.)  "'"[T]he reason for the change of circumstances rule is to preclude relitigation of the same facts" and to bring finality to determinations concerning financial support.'"  (*Usher*, at p. 357; accord, *In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 490 ["'Without a changed circumstances rule, "dissolution cases would have no finality and unhappy former spouses could bring repeated actions

14

for modification with no burden of showing a justification to change the order.""""].)

The party seeking modification of a child support order bears the burden of showing changed circumstances sufficiently material to support the modification. (*Usher, supra*, 6 Cal.App.5th at pp. 357-358; *In re Marriage of Cryer, supra*, 198 Cal.App.4th at p. 1048.) "'The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court.'" (*Usher*, at p. 358; accord, *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398.)

"'There are no rigid guidelines for evaluating whether circumstances have sufficiently changed to warrant a child support modification.'" (*Usher, supra*, 6 Cal.App.5th at p. 358.) "Each case stands or falls on its own facts, but the overriding issue is whether a change has affected either party's financial status." (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015; see *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556 ["'So long as the statewide statutory formula support requirements are met (Fam. [Code,] § 4050 et seq.), the determination is made on a case-by-case basis and may properly rest on fluctuations in *need* or *ability to pay*."];[14] *In re Marriage*

---

[14]     All further undesignated statutory references are to the Family Code.

Child support payments in California are determined by mandatory statutory guidelines set forth in section 4050 et seq. "The mandatory formula for calculating child support takes into account both parents' 'net monthly disposable income' [citation], which is determined based upon the parents' 'annual gross

*of McCann* (1996) 41 Cal.App.4th 978, 982 ["Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs."].)

"When modifying a support order, the trial court must provide a statement of decision explaining its ruling *if requested* by either parent." (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248; see § 3654 ["At the request of either party, an order modifying, terminating, or setting aside a support order shall include a statement of decision."].) "Under the doctrine of 'implied findings,' when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence." (*In re Marriage of Condon* (1998) 62 Cal.App.4th 533, 549, fn. 11; accord, *In re Marriage of McHugh*, at p. 1248.)

C.    *The Trial Court Did Not Abuse Its Discretion in Denying the Request To Modify Child Support*

Arthur contends the trial court should have reduced his child support obligation because Polina's income exceeded her claimed annual income of $90,000 and there was no basis for the court's finding Arthur had yearly income of $54,000 ($4,500 monthly). Arthur failed to meet his burden to present evidence showing either his or Polina's income had changed from the previous support order. (*Usher, supra*, 6 Cal.App.5th at p. 357.)

_____

income' [citation]." (*In re Marriage of Alter, supra*, 171 Cal.App.4th at p. 731.)

1. *Arthur failed to present evidence Polina's income had increased*

The trial court's June 20, 2017 child support order found Polina had a monthly gross income of $9,908 ($118,896 annually) based on her earnings of $39,089 in the first four months of 2017. Arthur presented no evidence of Polina's income in connection with the modification motion, let alone evidence showing Polina's income materially exceeded $118,896. To the contrary, all the evidence before the family court showed Polina's income had decreased, not increased. The Department submitted Polina's March 30, 2018 income and expense declaration stating her average monthly income was $7,400 ($89,280 annually), and Polina testified her annual income was $90,000.

Arthur asserts in his opening brief that Polina's "total pay in 2017 was $99,269 plus total benefits of $34,049 which makes total pay and benefits $133,318" based on figures published on the Web site Transparent California. But Arthur did not present this information to the family court in connection with the modification motion.[15] Arthur testified at the hearing that through "[t]his website, California Transparency [*sic*], I found out how much she is making money, and she was making money more than the judge calculated, $75,000. She was making $120,000 per [the] website." Even if the family court credited this testimony (without any documentation), it does not reflect a

---

[15] Arthur filed a printout of the Transparent California Web site listing Polina's 2017 income in connection with another postjudgment proceeding in the family court. He did not submit the document or refer to it in connection with the modification motion.

17

material increase in Polina's earnings above the $118,896 the family court used to calculate the June 20, 2017 child support order.[16]

> 2. *Arthur failed to present evidence of a material decrease in his income*

Arthur contends there was no basis for the trial court's finding he had a monthly income of $4,500, pointing out the annual income reported on his tax returns for the years 2009 through 2016 never exceeded $15,000. However, this is the same argument Arthur made in his March 16, 2017 request to modify child support. In its June 20, 2017 order increasing Arthur's child support obligation, the family court found no material change of circumstance in Arthur's monthly income from the $4,500 income amount the court calculated in the 2015 judgment. Absent evidence of changed circumstances after June 2017, Arthur's continuing reliance on his earlier tax returns is """"nothing more than an impermissible collateral attack on a prior final order."""" (*In re Marriage of Rosenfeld & Gross, supra*, 225 Cal.App.4th at p. 490.)

---

[16] The family court's June 20, 2017 order was also based on Arthur's 1 percent custodial timeshare with Alexander. Arthur does not dispute Polina's testimony at the 2018 hearing that Arthur had no visitation with Alexander. Further, to the extent Arthur's argument relies on $34,049 in unspecified benefits Polina received in 2017, Polina testified her employer provided health insurance benefits and she paid union dues, both of which must be deducted from a parent's gross income for the purposes of calculating child support. (§ 4059, subds. (c) & (d).)

In his income and expense declaration submitted in connection with the modification motion, Arthur listed his monthly income as zero, but he did not submit any tax returns or other evidence showing his income had decreased since June 2017, despite the Department's notice to produce his tax returns or other documentation of a reduction in his income. At the August 23, 2018 hearing, Arthur testified, "I didn't file an income tax return because I didn't make money," and that "if [income] is less than some amount then you don't have to." But as the trial court observed, whether or not Arthur was legally required to file a tax return, he had the burden to present evidence showing his income or loss of income.

Arthur did not present any evidence other than his very general testimony. He testified he lost his construction business and was unable to work because he suffered from a disability,[17] but when the trial court examined Arthur about the disability and how it prevented him from working, Arthur provided only vague answers. Arthur testified he suffered from depression, but when the court inquired as to the nature of his disability, Arthur responded, "You have to ask [the] doctor." Arthur claimed he had a "paper from [his] doctor" that he showed to the Department, but he never submitted documentation showing his current disability or inability to work. Arthur submitted a medical record showing he was diagnosed in October 2014 with generalized anxiety disorder and recurrent major depression and placed off work from October 22 to November 12, 2014. Arthur submitted another record showing he visited his doctor for the same conditions in

_____

[17] Arthur asserts in his reply brief he was not claiming a disability, but at the hearing he testified at length that he had no income because his disability prevented him from working.

March 2017, but he presented no evidence he was placed off work due to his disability for any time period other than in 2014. The medical records Arthur submitted to support his ex parte application to continue the hearing showed only that Arthur consulted with his doctor on May 10 and June 13, 2018 about generalized anxiety disorder and recurrent major depressive disorder, but likewise did not refer to a disability or Arthur's inability to work. Polina doubted Arthur had a disability, testifying she believed he continued to work in his flooring business with his nephew, and the company was still registered.[18]

Moreover, Arthur admitted at the hearing his sister, brother, and "all [his] family support[s]" him. Arthur testified that the prior month his brother gave him "around maybe $800," and Arthur used his mother's credit card to pay for gas. Arthur's family also paid for two or more trips each year to Russia, where other family members cared for him. Polina testified Arthur's family "buys him ticket[s] to go to Russia for two months four times a year. His family feed[s] him, whatever, give money for everything." The court had discretion to consider recurring gifts of money from Arthur's family as income for the purpose of calculating child support. (*In re Marriage of Alter, supra*, 171 Cal.App.4th at p. 722 [family court did not abuse its discretion in considering regular support spouse received from his mother as income for purposes of calculating child support];

---

[18] Arthur also testified he was previously employed as an IHSS caretaker for his mother until March 2017 when she could no longer get into his van. But there is no evidence what, if any, income Arthur received when he was providing caretaking services. The only income indicated on his 2016 tax return was business income from his flooring company.

cf. *In re Marriage of Williamson, supra*, 226 Cal.App.4th at p. 1315 [family court did not abuse its discretion in declining to consider as income prior cash advances from spouse's family where payments had ceased]; see § 4058, subd. (a) ["annual gross income" is defined as "income from whatever source derived"].)

On this record, as the party seeking a reduction in child support, Arthur failed to present "uncontradicted and unimpeached" evidence of changed circumstances from the June 20, 2017 support order that compels a finding in his favor as a matter of law. (*Juen, supra*, 32 Cal.App.5th at pp. 978-979; accord, *Dreyer's Grand Ice Cream, Inc. v. County of Kern, supra*, 218 Cal.App.4th at p. 838.)

D.     *The Trial Court Did Not Deny Arthur a Fair Hearing*

Arthur also contends the trial court denied him a fair hearing on the modification motion because (1) the court denied the motion without having copies of Polina's tax returns and (2) Arthur did not have an opportunity to file a supplemental brief.  Both contentions lack merit.

1.     *Arthur did not seek to discover Polina's tax returns prior to the hearing on the modification motion*

Arthur contends he was denied a fair hearing because Polina failed to provide her tax returns in connection with the modification motion.  He was not.  Section 3552 provides in relevant part, "(a) In a proceeding involving child, family, or spousal support, no party to the proceeding may refuse to submit copies of the party's state and federal income tax returns to the court . . . .  [¶]  (b)  The tax returns may be examined by the other party and are discoverable by the other party."  Section 3665,

21

subdivision (a), provides, "A copy of the prior year's federal and state personal income tax returns shall be attached to the income and expense declaration of each party."

Arthur's contention fails because he did not seek to discover Polina's tax returns, and absent a request, Polina had no duty to produce them. In connection with its modification motion, the Department served Arthur with a notice to produce his tax returns and pay stubs and to file an income and expense declaration. But it did not serve a notice to produce to Polina. Nor did Polina file a responsive declaration to the Department's modification motion, which would have triggered a duty for her to submit an income and expense declaration and produce her tax returns under section 3665, subdivision (a). (See Cal. Rules of Court, rule 5.92(g)(3) [responsive declaration must include completed income and expense declaration].)

We recognize the Department included in its moving papers Polina's March 30, 2018 income and expense declaration, and the declaration did not include Polina's tax returns. But if Arthur wanted Polina's tax returns, he could have requested she produce them under section 3552, subdivision (b), or other provisions of the Family Code. (See § 3664, subd. (a) [party ordered to pay support is entitled without leave of court to serve a request for production on the other party to produce an income and expense declaration]; § 3666 [discovery procedure may be enforced under procedures applicable to civil subpoenas and discovery under the Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.)].) It was not until midway through the August 23, 2018 hearing that Arthur first advised the court, "I would like to see her tax return also." Even then, Arthur did not make an express demand Polina produce her tax returns, nor did

he seek continuance of the hearing so he could obtain the records. Arthur cites no authority for the proposition a family court cannot hear a motion to modify child support without tax returns from the supported spouse. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, "'the court may treat it as waived, and pass it without consideration.'""]; *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 227 ["'Issues not supported by citation to legal authority are subject to forfeiture.'"].)

> 2. *Arthur forfeited his claim he was entitled to file a supplemental brief*

Arthur contends the Department's request in the middle of the August 23, 2018 hearing that the family court deny the Department's own motion or take the motion off calendar surprised Arthur and deprived him of an opportunity to present his argument to the court in a supplemental brief. However, Arthur never requested leave to file a supplemental brief or asked for a continuance of the hearing to do so. He has therefore forfeited any challenge to the court's failure to allow supplemental briefing. (*Li v. Yan* (2016) 247 Cal.App.4th 56, 65 ["""An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.'""]; *Haah v. Kim* (2009) 175 Cal.App.4th 45, 55 [same]; but see *In re P.A.* (2007) 155 Cal.App.4th 1197, 1210 ["[A]n appellate court may review an error despite a party's failure to raise it below if due process rights are involved."].)

Even if Arthur had not forfeited this argument, he has not shown he was denied a fair hearing. The modification motion did not request a specific support order, instead stating the "Department reserves the right to demonstrate additional changes in circumstances according to proof. . . ." Further, there is no requirement a court sua sponte order additional briefing if new issues are raised during a hearing. Arthur's reliance on Government Code section 68081, applicable only to appellate proceedings, is misplaced.[19] Arthur could have filed a responsive declaration prior to the hearing, but he elected not to do so. Further, Arthur testified at the hearing, and after the Department requested the motion be denied, the court allowed Arthur to provide additional testimony. Finally, Arthur has not on appeal identified any evidence or arguments he would have presented relating to changed circumstances since the 2017 support order, instead focusing on why the support calculations in the 2015 judgment and 2017 order were in error.

---

[19] Government Code section 68081 provides, "Before the Supreme Court, a court of appeal, or the appellate division of a superior court renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing. If the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition of any party."

## DISPOSITION

The September 7, 2018 order denying a child support modification is affirmed.  Arthur's appeal of the September 5, 2018 family court order is dismissed.  The parties are to bear their own costs on appeal.

FEUER, J.

We concur:


PERLUSS, P. J.


DILLON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.